UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                    Case No. 1:06:CR:245

ALEJANDRO SERRANO DOMENECH                          HON. GORDON J. QUIST
and WILLIAM SERRANO DOMENECH,

    Defendants.
_____/

## OPINION

The Defendants, Alejandro and William Domenech, have moved to suppress the drugs and firearms found in a motel room on the basis that the police officers conducted a warrantless entry, that the subsequent search warrant was based on evidence viewed and/or gathered during the warrantless search, and that any evidence gathered after the police officers obtained the search warrant must also be suppressed as fruit of the poisonous tree. The Court heard the testimony of witnesses and viewed exhibits on March 6, 2007. For the reasons set forth below, the Court will deny the motion on the ground that Defendants have failed to demonstrate standing.

### Findings of Fact

On April 3, 2006, four persons used two rooms at the Green Acres Motel in DeWitt Township, Clinton County Michigan. The group consisted of the two Defendants, Alejandro and William Domenech, 14 year old Kaci Clough, and another female named Maria or Michelle Garcia. The two room numbers were 22 and 31. The group of four arrived in a white SUV.[1]

---

[1] The Court accepts the testimony of Kaci Clough which was given in a state court motion to suppress and accepted as accurate by the state court judge. This testimony was subject to cross examination by the state court prosecutor.

At about 7:00 p.m. on April 3, Clinton County Sheriff's Deputies Chris Crawford and Travis Polash, driving their marked police vehicle past Green Acres, observed a green Ford Explorer begin to pull out of the motel's parking lot. The Clinton County deputies reasonably believed that the driver of the green SUV saw and recognized their vehicle as a police vehicle. Whereupon, the Explorer pulled back into the parking lot and parked in front of Room 22, with the rear of the Explorer facing the building. The officers knew that Green Acres was a motel which had a reputation for drug exchanges and prostitution. The Clinton County deputies returned late that evening, observed the green Explorer in the same parking spot, and obtained its license plate number. The license plate check indicated that the vehicle was registered to an individual named Marty Hinton, for whom there was an arrest warrant for absconding on parole. A fairly uncooperative motel clerk informed the officers that a man identifying himself as "Rogelio" and indicating that his car was a Pontiac had rented Rooms 22 and 31 that day. The motel registration further raised the officers' suspicions because of the following facts:

1. There was no last name on the registration.

2. The name "Rogelio" did not match the person who registered the green SUV with the state.

3. The registration listed the guest's vehicle as a Pontiac, while the car parked in front of Room 22 was a Ford Explorer SUV.

4. The vehicle had a Michigan license plate but the guest registration form listed the guest's city and state as Albert "LEA". The listed zip code for the guest was 56007.[2]

The two Clinton County Sheriff's deputies, Jason Jones of Dewitt Township Police, and Michigan State Police Trooper Timothy Burchell made preparations to arrest Marty Hinton on the outstanding warrant and identify the occupants of Room 22. The officers did not obtain another

---

[2] The Court checked the location of zip code 56007. It is Albert Lea, Minnesota. Apparently, the registrant put the second word of the city's name into the "State" box.

2

warrant. Shortly after 1:00 a.m. on April 4, all of the officers except Trooper Burchell went to the door of Room 22. Trooper Burchell took a position at the rear of the motel, next to the closed bathroom window of Room 22, in case someone tried to escape through either back window. Trooper Burchell aligned himself along the rear wall so that he could look into the bathroom window. The bathroom window, however, was made of frosted glass, which obscured the view, and the bathroom light was off. The window was quite small, and it is doubtful that an adult male could climb through this window. Another rear window had an air conditioner in it.

When Trooper Burchell heard officers at the front door make contact with the occupants, he observed the bathroom illuminate, a person approach what could have been a toilet, and an individual leaning over. Trooper Burchell did not know whether the person was male or female. Trooper Burchell did not see anything in the figure's hands. Trooper Burchell saw the person bend over from the waist, farther than a male would bend to urinate. Based on his observations and experience and the timing of the figure entering into the bathroom, Trooper Burchell believed that the individual was attempting to dispose of evidence. Trooper Burchell then opened the frosted bathroom window from the outside, at which point he could clearly see Alejandro Domenech ("Alejandro") preparing to throw what appeared to be drugs down the toilet. Trooper Burchell shouted at Alejandro to stop and attempted to knock the suspected drugs out of Alejandro's hand by swinging his flashlight at Alejandro's hands.

The officers at the front of the motel heard Trooper Burchell and, believing him to be involved in a struggle at the rear, entered the motel room. At this time, Alejandro exited the bathroom with the drugs in his mouth and returned to the main motel room where he was confronted by the other officers. Alejandro would not comply with the officers' orders to spit out the drugs and was repeatedly tasered before he could be handcuffed. During the struggle with officers, a folding knife fell from Alejandro's hand or pocket. The officers also observed a firearm in the motel room.

3

The officers arrested the other two occupants of the room, William Domenech and Kaci Clough, as well as Michelle Garcia, who was in Room 31.[3]

The officers then left and secured the motel room until a search warrant could be obtained. The warrant was obtained based on the drugs recovered, the fight between Alejandro and the police, and a pistol that was visible from the open door to the room. The warrant led to the discovery of the majority of the evidence that the Defendants now seek to exclude, guns and drugs.

## Conclusions of Law

The Government claims that the Defendants lack standing to challenge the search of the motel room because they had no reasonable expectation of privacy in the room. The Defendants argue that they have standing. The Defendants bear the burden of proof to show that they have standing. *Rakas v. Illinois,* 439 U.S. 128, 130 n.1, 99 S. Ct. 421 (1978). To meet this burden, a defendant must show that: 1) he had a reasonable expectation of privacy in the searched premises, and 2) society is prepared to recognize that expectation. *United States v. McRae*, 156 F.3d 708, 711 (6th Cir. 1998). The Defendants argue that they had a reasonable expectation of privacy because: 1) they kept the bathroom window closed; 2) they locked the front door; 3) they were overnight guests; 4) the renter of the room acted as a representative of the group when he rented the room and, therefore, the entire group had a legitimate expectation of privacy which was socially recognized; 5) the occupants brought their clothes into the room; and 6) there is an enhanced expectation of privacy in the bathroom.

In *Minnesota v. Olson*, 495 U.S. 91, 110 S.Ct. 1684 (1990), the Supreme Court held that status as an overnight guest "is alone enough to show that he had a reasonable expectation of privacy

---

[3]The affidavit for the warrant stated that three individuals were in Room 22 and one was in Room 31, but does not identify them by name. Clough's state court testimony was that "[e]verybody, but Maria" was in Room 22 when the officers arrived.

4

in the home that society is prepared to recognize as reasonable." *Id.* at 96-97, 110 S.Ct. at 1688. But in *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469 (1998), the Court held: "Property used for commercial purposes is treated differently for Fourth Amendment purposes than residential property. An expectation of privacy in commercial premises, however, is different from, and indeed is less than, a similar expectation in an individual's home."

The case closest to the instant case seems to be *United States v. Carr*, 939 F.2d 1442 (10th Cir. 1991), which was cited with approval in *United States v. McRae*, 156 F.3d 708 (6th Cir. 1998). In *Carr,* the defendant entered a conditional plea to a drug charge. On appeal, he argued that the trial court erred in denying his motion to suppress certain evidence seized during a search of his motel room. Carr had offered no testimony during the suppression hearing. After his motion was denied, Carr attempted to introduce an affidavit stating that the room had been registered to a female who, according to an FBI affidavit, could not be located or identified. In addition to this statement in the affidavit, all Carr could show was that he and his co-defendant had occupied the room for about three weeks prior to the search and seizure. The Tenth Circuit said:

> That (three weeks occupancy of the room) in itself would not constitute a showing of a legitimate expectation of privacy inasmuch as Carr did not in anywise demonstrate that the room was registered to him or to Price (the co-defendant) or that he was sharing it with someone to whom the room was registered.

939 F.2d at 1446.

The only remarkable difference between *Carr* and the instant case is that the Defendants here have submitted the transcript testimony of Ms. Clough. During a state court suppression hearing, Ms. Clough testified that she had come with the Defendants and "Maria" from New Mexico and had stayed in other motels with them in Michigan; that "we had rented two rooms" at Green Acres the night that the police arrived; that everyone but "Maria" was in the room when the arrests occurred; that the group arrived in a white Ford Explorer; that the group had been there for that day; and that

5

she did not know to whom the green Ford Explorer parked outside of Room 22 belonged. The problems with this testimony in showing that the Defendants had any reasonable expectation of privacy are as follows:

- Although Ms. Clough says that "we" rented two rooms that night, this statement is conclusory. There is no foundation for this conclusion - observation, plan, or anything other than the fact that the group occupied Rooms 22 and 31.

- There is no evidence that Ms. Clough knew who Rogelio was or whether one of the other travelers used the name of Rogelio when renting Rooms 22 and 31.

- The rooms were ostensibly rented to someone who claimed to be driving a Pontiac. There is no evidence that a Pontiac was ever driven by these Defendants, Ms. Clough, or "Maria."

- There is no evidence of what the persons in Room 22 were wearing at about 1 a.m. – whether they were dressed in street clothes (possibly indicating they were waiting for someone) or were ready for bed (possibly indicating that they were planning to stay overnight and expecting privacy).

- Ms. Clough's testimony is just as consistent with someone who is waiting for the true occupant of the Room to arrive, namely Rogelio, or someone using that name.

- Ms. Clough's testimony is just as consistent with the occupants of Room 22 waiting for a drug deal to go down with the true occupant of the room as it is with genuine residence or occupancy of the room, thus bringing the instant case into the *Minnesota v. Carter* frame of analysis.

Ms. Clough's testimony is also consistent, of course, with the possibility that someone named Rogelio, or someone using that name, rented the rooms on a trip and that all of the occupants

intended to be overnight guests in the room. But there is no credible evidence that they did so,[4] and the Defendants have the burden of proof on this issue. Moreover, here, as in *Carr*, the Defendants chose not to testify. Thus Ms. Clough's testimony does not make this case materially different from *Carr*.

The Defendants' argument that they had a legitimate expectation of privacy in the bathroom is unpersuasive. Having failed to meet their burden of showing that they had a legitimate expectation of privacy in the motel room, where sex can occur, it is unclear how the Defendants could have a legitimate expectation of privacy in the bathroom of that motel room. The Defendants cite *United States v. Harris*, 255 F.3d 288, (6th Cir. 2001), which found that an individual who admittedly did not have a legitimate expectation of privacy in a residence searched pursuant to a warrant, likewise did not have a legitimate expectation of privacy in the bathroom of that residence. *Harris* rejected the argument that police should have to knock and announce when opening interior doors of a residence while conducting a lawful search. The Defendants also point to cases, cited in *Harris*, which found that individuals using a public restroom may have a privacy interest in being free from police surveillance absent a warrant or probable cause. *See United States v. Delaney*, 52 F.3d 182 (8th Cir. 1995); *Kroehler v. Scott*, 391 F. Supp. 1114 (E.D. Pa. 1975). In this case, however, the bathroom was part of the motel room and was not a public restroom. The Defendants have not shown that they have standing to challenge the search of the motel room and, as in *Harris*,

---

[4]The Defendants did not introduce evidence of Rogelio's identity, or evidence that an individual with this name actually rented the rooms, other than the incomplete motel registration. In their brief, however, the Defendants claim that Rogelio was a member of their party, whoever Rogelio may be. (Def.'s Reply Mem. in Supp. Mot. to Suppress at 5-6.) At the suppression hearing, Officer Jason Jones testified that the motel manager could not describe the individual who rented the rooms when he questioned her prior to the search. Immigrations Customs Enforcement Agent Dan Gwyn testified that when he questioned the motel manager in January 2007, she identified the person who rented the rooms as a black male, around 5' 6" in height, and did not identify a photograph of either Defendant as the person who rented the rooms.

cannot claim that they have standing solely because Alejandro was in the bathroom at the time of the search.[5]

## Conclusion

For the reasons set forth above, the Court will deny Defendants' motions to suppress.

An Order consistent with this Opinion will be entered.


Dated: April 6, 2007                                    /s/ Gordon J. Quist
                                                        GORDON J. QUIST
                                                        UNITED STATES DISTRICT JUDGE

---

[5]Although the search in *Harris* was conducted pursuant to a warrant, the Defendants still must meet their burden of showing that they had standing to challenge the warrantless search in this case and they have failed to do so.